301 So.2d 897 (1974)
Mrs. Mary Jane Sparks LOICANO, Jr., wife of and Anthony G. Loicano, Jr.
v.
MARYLAND CASUALTY INSURANCE CO. CONSOLIDATED WITH,
Anthony G. Loicano, Jr., Ind. and For and on Behalf of his minor daughter, Donna Marie Loicano
v.
Maryland Casualty Ins. Co. and the Travelers Ins. Co.
No. 6242.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1974.
Rehearing Denied November 7, 1974.
*898 Francipane, Regan & St. Pee, Chester Francipane, Metairie, for Md. Cas. Co., defendant-appellant.
Schroeder, Kuntz & Miranne, Herman M. Schroeder, Richard A. Kuntz, New Orleans, for Anthony G. Loicano, Jr., individually and for on behalf of his minor daughter, Donna Marie Loicano, plaintiff-appellee.
James L. Selman, II, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Travelers Ins. Co., defendant-appellee.
George M. Papale, Gretna, for Mrs. Mary Jane Sparks Loicano, Jr., w/o and Anthony G. Loicano, Jr., plaintiffs-appellees.
Before LEMMON, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
Mr. and Mrs. Anthony G. Loicano, Jr., filed suit for damages as a result of a collision between an auto being driven by Mrs. Loicano and a vehicle being operated by an employee of A.M.F. Tuboscope. The defendant, Maryland Casualty Insurance Co., is the liability insurer of A.M.F. Tuboscope and the plaintiffs sued the defendant directly. Mrs. Loicano sought recovery *899 for pain and suffering, mental anguish and permanent disability suffered by her, and Mr. Loicano asked for special damages for various items such as medical expenses and the like. The plaintiffs allege that the accident occurred solely through the negligence of the defendant's insured. The defendant filed an answer which generally denied the allegations of the petition, but specifically alleged that the sole cause of the accident was the negligence of Mrs. Loicano in several respects. The instant case and its companion case, involving injuries to the plaintiffs' minor daughter, who was a passenger in the car operated by Mrs. Loicano, were consolidated for trial. The trial court in the present case rendered judgment in favor of the plaintiffs, awarding Mr. Loicano $6520.00 for special damages, and Mrs. Loicano $25,000.00 for her injuries and damages. From this judgment, defendant has appealed.
The main issue is a question of fact. This accident occurred about 6:30 A.M. on November 22, 1965, on Highway 23 in Plaquemines Parish, on the West Bank of the Mississippi River. Mrs. Loicano was driving her 1961 Mercury Comet in a northerly direction towards New Orleans from Port Sulphur, where her mother resided. Mrs. Loicano had spent the night at her mother's home in Port Sulphur and was returning to New Orleans with her 18 month old daughter, Donna, sleeping on the front seat. At the same time, a 1953 GMC Carryall, owned by A.M.F. Tuboscope, and being operated by its employee, Billy R. Jeans, was proceeding in a southerly direction from Harvey, Louisiana, towards Myrtle Grove. Jeans was engaged at the time on Company business. Mrs. Loicano and Jeans agree that visibility was limited because daylight was just breaking and it was misty and foggy. At the point of the accident, Highway 23 is a two lane roadway, with one lane for each direction of traffic.
Mrs. Loicano testified that because of the limited visibility she watched the right hand side of the road to ascertain whether or not she was far enough from the edge because there was a slight dropoff to the shoulder. She glanced up after checking the edge of the road and saw the headlights of Jeans' truck about four car lengths in front of her in her lane, i.e., the right lane as she was driving. She was certain the impact occurred in her lane. She applied her brakes but she remembered nothing after that because she was knocked unconscious. She estimates that, just prior to impact, she was traveling at a speed of 40 to 45 miles per hour with her headlights on.
At the time of the trial, Billy Jeans was working in Texas for a different employer and declined to testify at the trial because he could not lose the time from work. However, he did give two pre-trial depositions, one of which was not admitted into evidence because timely notice of the taking of the deposition was not given to all interested parties. This deposition is in the record by way of a proffer but we do not consider it because we agree with the ruling of the trial judge.
Jeans testified that he was alone in his vehicle and that he was driving about 45 miles per hour with his headlights on. This was the first time he had driven this route but he had been over it at least twice before as a passenger and thought he was familiar enough with the area. He first saw the Loicano car with its headlights on about a quarter of a mile away approaching him in the lane to his left. The Loicano car simply pulled over into his lane and collided with his vehicle in his lane. To avoid the impact, he had cut his wheels sharply to his right, but he was still hit, and he went off the road to his right. He insists that he veered to his right and is certain Mrs. Loicano did nothing to avoid the accident. He cannot remember if he applied his brakes or not.
Other than the two drivers, there were no witnesses to the accident. Jeans related that, after impact, the vehicles came to rest *900 on his side of the road. Mrs. Loicano was unconscious after the accident and could not testify to the position of the vehicles after impact.
We are thus faced with a situation, not uncommon, where the testimony of the only eye witnesses, the drivers, are in irreconcilable conflict. The trial judge gave no reasons for judgment, but since he rendered judgment in favor of Mrs. Loicano, he obviously relied on her testimony. If this were the only evidence presented in the case we would agree with the trial judge because of the wide discretion afforded him in evaluation of the witnesses' testimony. However the evidence in this case goes beyond that mentioned above, and a consideration of that evidence, after resolving certain procedural and evidentiary questions, leads us to conclude the judgment was in error.
The first question is the admissibility of the testimony of Harry J. LeBlanc. The trial judge refused to let this witness testify but permitted his testimony to be recorded as a proffer to assist expeditious resolution of the case. C.C.P. Art. 1636.
Harry J. LeBlanc was Jeans' immediate superior at the Harvey plant of A.M.F. Tuboscope and had driven, in response to a summons, to the scene of the accident shortly after it happened. While there he took some photographs and observed the scene at that time. The record discloses that three dates were given over to the hearings in these consolidated cases, namely, October 7, 1971, November 2, 1971, and November 30, 1971. The first day of hearing was very short and given over mostly to evidence by the plaintiff in the case involving the Loicano child, and apparently it had been determined before that hearing proceeded that another day would be necessary for production of witnesses, etc. This hearing came on November 2, 1971 and at that hearing plaintiffs presented the rest of their evidence, with the exception of a proposed deposition of Dr. Canale, who was absent from the country. Defendant Maryland Casualty Company moved for a continuance to permit the taking of evidence from two absent witnesses, one being Trooper Lemay, who had been subpoenaed but was absent, and the other was LeBlanc, who was not under subpoena. Counsel represented to the court that LeBlanc had been called out of the area on a company emergency and could not appear. The nonappearance of these two witnesses was considered separately and the court refused to grant a continuance to permit the testimony of LeBlanc, because he had not been subpoenaed. However, the court then continued the matter to November 30, 1971 to permit the testimony of Trooper Lemay, because he had been under subpoena. Additionally, it was proposed by all parties that the deposition of Dr. Canale would be taken prior to that time and submitted to the court at that time.
On November 30, when the matter again came for trial, Trooper Lemay was present and his testimony was taken. The deposition of Dr. Canale was introduced into evidence. However, defendant Maryland then offered LeBlanc as a witness, and objection was immediately raised. The court announced that it had already ruled at the previous hearing that LeBlanc's testimony would not be permitted, only that of Trooper Lemay, and refused to permit LeBlanc to testify. However, the court did permit the testimony of LeBlanc to be taken as a proffer so that the testimony could be considered if permissible.
Louisiana Code of Civil Procedure, Art. 1602 provides the following as peremptory grounds for granting a continuance for trial of a matter:
"Art. 1602. Peremptory grounds
"A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of *901 due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance. As amended Acts 1966, No. 186 § 1."
As we view the matter, the test for production of a material witness is not simply that a subpoena has or has not been granted, but that the witness has absented himself contrary to the arrangement made by the party for the witness to appear. Certainly, whether or not a person has been subpoenaed to appear is of great importance in determining whether or not that person is indeed expected to be a witness. However, we do not believe that it should be the exclusive grounds for such determination. Generally, we agree that it is within the discretion of the trial judge to determine that an unsubpoenaed witness, absent compelling grounds for non-appearance, is not a basis for a continuance, particularly when the trial will be concluded at that time. In this case, the trial was not concluded, but was continued for the purpose of receiving the testimony of Trooper Lemay, and for the purpose of obtaining the deposition or testimony of Dr. Canale, and we perceive no valid reason why the testimony of LeBlanc could not have been taken on the proposed new trial date. The record discloses that the parties were aware of the proposed appearance of this witness on November 2nd and no one would be taken by surprise. It is further shown that the witness was a supervisory employee of the company whose insurer was being sued, and that it was expected that he would be present at trial without difficulty. However, the day before trial he was called on company business to an emergency on an oil rig in the Gulf of Mexico, and the transportation company was unable to return him from the Gulf in time to be present at the trial. Thus LeBlanc could not have attended court that day even if he had been subpoenaed. We conclude that these circumstances meet the test of article 1602 and the testimony of LeBlanc should have been permitted on November 30.
The next question is the admissibility of the police report into the evidence. Trooper Lemay of the Louisiana State Police was produced as a witness on November 30. He testified that at the pertinent time he was assigned to Plaquemines Parish for several months in order to assist in recovery from the hurricane of that year. Although he regularly patrolled the highway in question, he had no recollection of the accident and his investigation into the circumstances of it. Because of this, the defendant insurer attempted to introduce into evidence his police report on the theory that it represented his past recollection recorded. The report was not signed by Lemay but contained only his typewritten name and badge number. Lemay could not identify the report as his. He could only say that the symbols representing automobiles in a diagram of the collision was similar to those he used, and the report was typewritten in capital letters, a method used by both him and his wife, who sometimes typed out his reports. He could not say whether other troopers used similar methods. The trial judge, in an effort to determine the validity of the report, examined the radio logs of the Plaquemines Parish Sheriff's Office to discover whether or not Lemay had actually been assigned to this traffic investigation. In so doing he spoke to several people who apparently assured him of authenticity of the radio log and explanation of the codes used therein. The judge took judicial cognizance of the log, and it was proposed to produce someone to explain the circumstances of the log, but for some reason, this witness was never produced. In any event, the net effect of the log simply showed that a State trooper investigated the accident, that his identification number was that used by Lemay around the time in question, but also used by other troopers who used the same vehicle call number.
*902 Considering these facts, we do not believe that sufficient basis was laid for the introduction of the document to represent the past recollection recorded of Trooper Lemay. A fair analysis of the testimony is simply to the effect that the witness had no recollection whatsoever concerning the incident and could only say that the report may be similar to reports typed by him or his wife. Additionally the witness testified that his reports are usually based upon his own observations and the statements of witnesses at the scene. He could not distinguish in this report what was told him and what he determined as a fact by himself. See for example Veal v. Hutchinson, 284 So.2d 60 (La.App.4th Cir. 1973). We conclude that the report should have been excluded from evidence, and we do not consider it on this appeal.
To summarize the evidence before us for the purpose of liability and the facts of the accident only, we point out that the evidence consists of the above described testimony of Mrs. Loicano and deposition of Jeans, the testimony of LeBlanc together with two photographs he took, and the testimony of Mr. Loicano. The testimony of Mr. Loicano was only to the effect that he recognized the damages to his Comet automobile, and some general description of the area of the collision from his knowledge of the area, he not having been present at the scene during the pertinent times. The testimony of LeBlanc, we believe to be of great importance, and note that it was not considered by the trial judge in any consideration of credibility.
LeBlanc testified that in his position as Supervisor, he was notified of the accident and rushed to the scene some thirty-five to forty minutes later, arriving while the police were on the scene awaiting the arrival of a wrecker to move the vehicles. He discussed the accident with his driver and the police, and based upon their statements he concluded that the vehicles had not been moved but remained where they came to rest after impact. These statements are of course subject to the hearsay evidence rule, but no objection was made to such statements, and indeed they were elicited on cross examination. The major importance of LeBlanc's testimony is in the two photographs that he took. It should be noted that these photographs had already been introduced into evidence in connection with testimony of other witnesses, and they show the relative positions of the automobiles in relation to each other and to the highway and shoulder. They further show the damage to the front of each vehicle. The GMC Carryall driven by Jeans is shown to be resting at roughly a 30 angle from the line of the highway with its left front wheel on the pavement and its right front wheel a short distance off the pavement on the shoulder of the road. The front is heavily damaged, the greatest concentration being to its left front, or driver's side. The Comet driven by Mrs. Loicano is facing the Carryall a short distance in front of it, but at a greater reverse angle, perhaps 60, to the line of the road with both rear wheels being on the highway and both front wheels on the shoulder, the right front wheel being much closer to the highway than the left front wheel. The damage on the Comet is severe to the front of it, it being concentrated mainly on the right front, or away from the driver's side. The pictures themselves do not establish which side of the highway the vehicles are resting, but Mr. LeBlanc testified unequivocally that the cars were on the west side (Jeans' side) of the highway.
Considering the apparent damage to the vehicles we must conclude that the collision occurred on Jeans' side of the highway. Although each driver testified that the other was completely out of his or her proper lane and into the opposing lane, we note that Jeans' testimony is that he was turning right at the time of the collision, while Mrs. Loicano's testimony is that she was going straight ahead the last she remembered before the collision. The damage is *903 concentrated on the left front point of Jeans' Carryall and the right front point of Mrs. Loicano's Comet. The damage is inconsistent with her statement that the vehicle was directly in front of her, for to cause the severe damage at the locations mentioned, it would have been necessary for Jeans' vehicle to be approaching from off of the shoulder of the road to strike Mrs. Loicano's right front. On the other hand, the damages shown are perfectly consistent with the testimony of Jeans that Mrs. Loicano's vehicle was coming over into his lane at an angle and he attempted a right turn. Additionally, the testimony of LeBlanc is corroborative of Jeans' testimony that the vehicles came to rest on his shoulder of the road, as opposed to Mrs. Loicano's testimony that she did not know where the vehicles came to rest because she was unconscious. There is no evidence in the record to establish the principles of physics or dynamics involved in this almost headon collision. However, it is difficult to presume that two vehicles colliding on one side of a straight roadway could wind up in a position facing each other at an angle off the opposite side of the roadway as these vehicles do.
Under our analysis of the evidence, we have the conflicting and irreconcilable testimony of the opposing drivers together with some corroboration of one driver by his employers' supervisor. We also have the obvious physical facts demonstrated by the photographs. The general rule is that where the testimony of the parties is irreconcilable, the physical facts surrounding the accident are to be accepted by the court as the determining factor. Vanney v. Laborde, 147 So.2d 872 (La.App., 4th Cir. 1962); Hollins v. Jefferson Oil Co., 124 So.2d 629; (La.App., 3rd Cir. 1960); Bea v. Russo, 21 So.2d 530 (La.App., 1st Cir. 1945).
Applying this principle of evidence to the case at bar, we conclude that the physical evidence is consistent with Jeans' testimony and inconsistent with Mrs. Loicano's testimony and we accept Jeans' version of the accident, that is, that Mrs. Loicano drove her vehicle into Jeans' lane of travel as the two vehicles approached. In so concluding, we find that Mrs. Loicano's act was negligence and it was the sole, proximate cause of the collision.
Accordingly, the judgment appealed from is reversed, and there is now judgment in favor of appellant, Maryland Casualty Company (also called Maryland Casualty Insurance Company herein) dismissing the suit of plaintiffs-appellees, Mrs. Mary Jane Sparks Loicano, wife of/and Anthony G. Loicano, Jr. at their costs.
Reversed.
LEMMON, J., concurring with written reasons.
LEMMON, Judge (concurring).
I agree with the result and the reasoning of the majority based on the evidence in this case. This result is further supported by evidence which the majority ruled inadmissible.
In my opinion certain portions of the police report were admissible as past recollection recorded. The majority excluded this evidence, principally on the basis that Maryland Casualty Company failed to prove Trooper Lemay prepared the written report.
In order to admit a writing as past recollection recorded, it is necessary that the person who prepared the writing testify as to its accuracy or as to his practice of recording such matters accurately. Here, the officer affirmed his practice of preparing accident reports accurately, but could not state positively that he had prepared this particular report.
The majority apparently would have had no problem as to admissibility had the officer identified his signature on the report. While his signature on the report may have been more conclusive proof, I believe *904 that the evidence preponderates in favor of the conclusion that the officer prepared this particular report.
The document offered was the copy of an official report on file with the Division of State Police. The report contained the officer's name, rank and badge number. The investigation occurred on a day on which the officer was on duty in the area of the accident. The report was typed in capital letters, as was the officer's custom, and he identified the symbols representing vehicles as similar to those used by him on these reports. Finally, he identified the wrecker service as one customarily called by him at that time to tow wrecked vehicles.
There was no indication that the trooper did not prepare the report on which his name appeared. Indeed, the trooper recognized certain features of the report which were characteristic of reports made by him. Although he could not positively identify the report as having been prepared by him, the evidence taken as a whole shows that the fact sought to be proved by Maryland (that this officer prepared this report) is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). I therefore believe certain portions of the report are admissible as past recollection recorded.
Many parts of the report, however, must be excluded as hearsay evidence or as opinion evidence. Nevertheless, the officer's diagram of the position of the vehicles at rest after the collision represents his observation rather than his conclusion or his recordation of the observation of others. Similarly, his indication on the report (by means of the diagram) that both vehicles came to rest on the west side of the highway is a fact observed by him. These relevant and important facts, representing first hand information acquired by the officer at the scene of the accident and recorded by him immediately after the accident, should have been admitted under the doctrine of past recollection recorded.