558 So.2d 731 (1990)
STATE FARM FIRE & CASUALTY COMPANY, Plaintiff-Appellee,
Joyce Croft, Intervenor-Appellee,
v.
VALLEY ELECTRIC MEMBERSHIP CORPORATION, et al., Defendants-Appellants.
No. 88-1192.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
*733 Lunn, Irion, Johnson, Salley & Carlisle, Brian D. Smith, Shreveport, for defendants-appellants.
Thomas & Dunahoe, Robert C. Thomas, Natchitoches, for intervenor-appellee.
Cook, Yancey, King & Galloway, Charles G. Tutt, Shreveport, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
State Farm Fire & Casualty (hereafter State Farm) sued Valley Electric Membership Corporation (hereafter Valley Electric) and its insurer, Federated Rural Electric Insurance Corporation (hereafter Federated), for recoupment of sums it paid to its insured, Joyce Croft, for the loss of her home and its contents by fire. A jury determined that Valley Electric was 100% at fault in the Croft fire, that Croft was entitled to $6000 damages not compensated by State Farm, but that State Farm was not entitled to recover damages from Valley Electric and Federated. Although all the litigants filed motions for JNOV, the trial court granted only State Farm's, and awarded it judgment against Valley Electric and Federated in the sum of $54,518.80.
Valley Electric and Federated appeal, contending the trial court erred: (1) in denying their motions for directed verdict and for JNOV on the issue of liability; (2) in denying their motion for new trial on the liability issue; (3) in failing to grant their motion for new trial on the issue of the denial of their motion for continuance; (4) in granting a JNOV on the issue of damages; (5) in denying their motion for JNOV on the issue of Croft's damages; (6) in denying their objection to the special verdict form submitted to the jury; and (7) in limiting the opinion of their expert witness, Robert Harbour.
Croft answered the appeal, seeking an increase in the property damages and an award for mental anguish. State Farm also answered the appeal, asking us to consider the opinion of Fred Vanderbrook as an expert in the field of failure analysis and the determination of the cause and origin of fires, and that we set his expenses as an element of court costs.
We affirm in part, and amend in part to award Croft damages for mental anguish and additional sums to cover cash money lost in the fire.

FACTS
Croft purchased a home in Natchitoches Parish in April 1982 from Floyd Cason, and moved in during the latter part of June. In the first two weeks of July, she began experiencing problems with the dimming of lights and the television picture; this happened repeatedly, but a few seconds later everything would return to normal. Croft also noted that the mercury vapor light in her backyard dimmed whenever her household appliances and lights dimmed; this outdoor light was energized directly from Valley Electric's lines and was not connected through her breaker panel. Croft contacted Valley Electric, her supplier of electricity, concerning the problem. The testimony at trial indicated that there was a dispute about the number of times Perry Baker, a Valley Electric lineman, responded and what exactly he said to Croft. Nevertheless, the record shows that Baker was sent by Valley Electric to the Croft home at least once. Croft testified that Baker told her that the electric problems were due to an old service wire from the transformer to her home and he would take care of it. Croft further testified that when the problem persisted, Valley Electric again dispatched Baker. On this second occasion, Croft testified that Baker told her that they fixed the problem by making adjustments further up the line, and that *734 she should watch her appliances to see if it made a difference.
Croft also testified that Buck Miley, a Valley Electric board member, came to her home after he learned of her problems from Cason. Miley told Croft that the wire leading to her house was old and it was not supplying enough voltage. Miley said that he would be certain that Valley Electric would get something done. Valley Electric never told Croft that the dimming problem was not coming from its equipment. On July 26, 1982, within one week of Miley's visit, Croft's home burned.
State Farm paid Croft $54,518.80 for the loss of her home, its contents, and for additional living expenses. By virtue of the payment made to her, Croft subrogated to State Farm whatever rights she may have had against Valley Electric and Federated as a result of the fire. This litigation then ensued.
All parties agree that the cause of the fire was in Croft's breaker panel box, not in Valley Electric's equipment, and that Valley Electric did not replace the service wire prior to the fire. The dispute arises over Valley Electric's duty to Croft. Valley Electric contends that it cannot be held liable for a fire caused by a defect in the customer's electrical equipment in the absence of proof that it, through its employees, had prior knowledge of the existence of the defect. State Farm contends that because Croft was always told the dimming problem was in Valley Electric's lines and she was never told the problem was in her equipment, Valley Electric was the cause in fact of the fire. After analyzing the peculiar set of facts of this case under a duty-risk analysis set forth below, we agree with State Farm.

DIRECTED VERDICT/JNOV
Valley Electric and Federated first contend that the trial court applied an incorrect standard, i.e., the former scintilla of evidence rule, in its assessment of their motions for directed verdict and JNOV. Accordingly, they argue that the trial court erred in denying both of these motions.
The jurisprudence has established that the standard for directed verdict and JNOV are the same. Quoting from Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), we stated in Silliker v. St. Landry Parish Police Jury, 520 So.2d 880, 884 (La.App. 3rd Cir.1987):
"`On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all of the evidencenot just that evidence which supports the nonmover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'"
See also Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La. App. 3rd Cir.1983), writ denied, 437 So.2d 1149 (La.1983).
Even if a trial court misapplies the standard, an appellate court, examining the record in light of the correct standard, may nonetheless find that the trial court properly acted in disposing of the motions for directed verdict and JNOV. Dubois v. El Do Corp., 436 So.2d 1317 (La.App. 3rd Cir. 1983).
In reviewing a trial court's decision relative to the denial of motions for directed verdict and JNOV, it is the duty of the appellate court to determine whether the trial court's findings were manifestly erroneous. Silliker, supra.
Valley Electric and Federated first contend that the trial court improperly evaluated their motion for directed verdict, using a standard that there was at least a scintilla of evidence to present the case to the jury. Though the trial court did not elaborate on its analysis in the present case, we *735 find that even if it did apply the no longer acceptable scintilla of the evidence rule, that the trial court was not manifestly erroneous in its denial of Valley Electric and Federated's motions.
It is axiomatic that the propriety of a directed verdict or motion for JNOV must be evaluated in light of the substantive law underpinning the plaintiff's claims. Moore v. Aetna Cas. & Sur. Co., 454 So.2d 1273 (La.App. 2nd Cir.1984). The substantive law applicable to the case sub judice is general negligence law.
The root of Louisiana negligence law is found in LSA-C.C. Art. 2315 which provides in pertinent part that, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
Louisiana courts have adopted a duty-risk analysis in determining legal responsibility in a tort claim. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). To find the defendant liable for negligence, each of the following questions must be answered affirmatively: (1) Did the defendant owe a duty to the plaintiff? (2) Was this duty breached? (3) Was the breach of duty a substantial factor in bringing about harm to the plaintiff? and (4) Did the risk and harm encountered by the plaintiff fall within the scope of the protection afforded by the duty breached? Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988).
State Farm and Croft assert that Valley Electric was negligent because its lineman misdiagnosed that the problem was with Valley Electric's service, and further misled Croft into thinking that the problem was not with her panel box or the electrical wiring inside the home. As a result, Croft's house burned because the problem in the panel box was left undetected. After carefully reviewing the evidence and the testimony presented, we find that the trial court properly denied Valley Electric and Federated's motions for a directed verdict and JNOV.
The initial inquiry in any duty-risk analysis is causation. If a plaintiff can show that he probably would not have suffered damages, absent defendant's conduct, he has carried his burden of proving cause in fact. St. Hill v. Tabor, 542 So.2d 499 (La.1989).
In the case sub judice, Leo Friday, Valley Electric's safety director, testified that he was a lineman for ten years and that he performed the same job as Baker during that time. He testified that in evaluating a customer voltage complaint he would:
"[C]heck the voltage with the load [i.e., with appliances operating] and without the load [i.e., with no appliances operating]. And check all our connections. Check the load and make sure we had the proper wire size, proper transformer size to take care of that load. And if we had no problems, I'd let the consumer know that there was no problem on our part and if they continued to have troubles, it would have to be on their part."
Croft testified that Baker came to her home on two separate occasions in response to her complaints to Valley Electric.[1] On the first visit Croft outlined the various problems she encountered, including the dimming of the outdoor mercury vapor light. After Baker examined Valley Electric's equipment, Croft testified that Baker told her that Valley Electric was going to have to change its service wires. No repair work was commenced. Approximately one week later, Croft again called Valley Electric to let it know that she was *736 still experiencing dimming problems. When Valley Electric's personnel again visited the Croft residence, Croft testified that Valley Electric's workers advised her that they had corrected her problem by doing work "down the highway", and that she was asked to watch her household appliances to see if their repairs made any changes.
Baker testified rather nebulously about his servicing of the problems at the Croft residence. Although Baker could not say how many readings he took, Friday testified that Baker took only one voltage reading at the Croft residence, a no load reading, and that the reading, 117 volts, was normal. Baker did state that if there was something wrong with Valley Electric's equipment, it was normal that they fix it while they are there or at least shortly thereafter. It was undisputed that prior to the fire, Valley Electric never changed any of its wires servicing the Croft residence. Baker also stated if there was nothing wrong with Valley Electric's equipment, he would tell the customer so that the homeowner could get an electrician to investigate the problem. Baker had no recollection of ever talking to Croft. At the time of trial, Baker was no longer employed by Valley Electric.
Croft testified that she called Valley Electric first, knowing that if Valley Electric ruled out its equipment as a cause of her problem, she would have to hire an electrician. From the beginning, Baker failed to make the proper tests, he took no on load voltage reading, and erroneously told Croft that the problem was Valley Electric's. Furthermore, when Miley visited Croft, he exacerbated Baker's errors by telling her, just by looking at the wires from the driveway, that it was undersized Valley Electric wires causing her problem. On this basis, we find that Croft carried her burden relative to cause in fact by showing that she probably would not have lost her home by fire but for Valley Electric's conduct in leading her to believe that the dimming problem was caused by Valley Electric's equipment.
We now turn our attention to the question of Valley Electric's duty to Croft. A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. St. Hill, supra, quoting Prosser and Keeton on the Law of Torts (5th ed. 1984). A power company is required to recognize that its conduct involves a risk of causing harm to another if a reasonable person would do so while exercising such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence and judgment as a reasonable person would have. If the company has, in fact, more than a minimum of these qualities, it is required to exercise the superior qualities that it has in a manner reasonable under the circumstances. Levi v. S.W. La. Elec. Membership Co-Op., 542 So.2d 1081 (La.1989).
Clearly, Valley Electric had a duty to properly determine whether its equipment was the cause of Croft's dimming problems. Croft's and Valley Electric's experts agreed that a problem in Croft's breaker panel box caused the fire, not Valley Electric's service lines. Moreover, Melville Zmek, Valley Electric's expert electrical engineer, and John Stewart, State Farm's expert electrical engineer, both testified that the 117 volt no load reading was normal. Had Valley Electric properly evaluated the complaint, Croft would have known what course of action to take. Instead, Valley Electric's actions lulled Croft into thinking that Valley Electric's equipment was the cause of the dimming problem. Indicative of this misguided trust was Croft's repeated calls to Valley Electric when the dimming problem persisted and that she continued to call on Valley Electric to make repairs. By this conduct, Valley Electric breached its duty to act reasonably under the circumstances and to guard against unreasonable risks of harm to its customer.
We likewise find that the particular risk, that one of its customer's homes would burn if it failed to properly discern that its equipment was not the cause of the *737 problem presented, was clearly within the scope of its duty.
Therefore, we find that all the elements of the duty-risk analysis were met, and that the trial court properly denied Valley Electric and Federated's motions for directed verdict and JNOV. We find that there was substantial evidence opposed to the motions of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach conclusions different from that urged by Valley Electric and Federated. Furthermore, after carefully reviewing the evidence presented, we cannot say that the jury's verdict finding Valley Electric 100% at fault was manifestly erroneous.

CONTINUANCE
Valley Electric and Federated next contend that the trial court erred in denying their motion for a continuance because of the unavailability of Robert L. Harbour, one of their expert witnesses, and that they should have been granted a new trial on this ground.
LSA-C.C.P. Art. 1602 provides:
"A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance."
However, it is within the discretion of the trial court to determine that an unsubpoenaed witness, absent compelling grounds for non-appearance, is not a basis for a continuance. Loicano v. Maryland Casualty Insurance Co., 301 So.2d 897 (La.App. 4th Cir.1974).
The record bears out in the present case that Valley Electric and Federated had not subpoenaed Harbour. No explanation of Harbour's absence, other than that he had to be in New Orleans, was stated for the record. Although we do not believe that the failure to subpoena a witness should be exclusively determinative of this issue, we do not find that Valley Electric and Federated established any compelling grounds for Harbour's non-appearance. On this basis, we cannot say that the trial court abused its discretion in denying the motion for continuance, and allowing Harbour's discovery deposition to be read to the jury.

STATE FARM'S ENTITLEMENT TO RECOVER
Valley Electric and Federated contend that the trial court erred in awarding State Farm damages on State Farm's motion for JNOV. They argue that this award was improper because the jury specifically awarded no damages to State Farm.
The standard for granting a JNOV is detailed hereinabove and will not be repeated.
State Farm proceeded against Valley Electric and Federated under the subrogation provisions of the homeowner's policy it issued to Croft. Valley Electric and Federated do not contest the subrogation provisions of the homeowner's policy, and do not question the $54,518.80 State Farm paid to Croft as a result of the fire.
In the present case, Valley Electric and Federated do not question the jury's determination that Croft was not negligent in causing the fire. Viewing the evidence submitted, the facts and inferences point so strongly and overwhelmingly in favor of State Farm's entitlement to the $54,518.80 it paid Croft under its policy that reasonable and fair-minded persons could not arrive at a contrary verdict. Therefore, we find that the trial court properly granted State Farm's motion for JNOV, awarding it damages in the amount of $54,518.80.

CROFT'S DAMAGES
Valley Electric and Federated contend that the trial court should have granted their alternative motion for JNOV. They argued that the $4000 jury award for damages to the house not covered by insurance was an item of special damages not specifically pleaded by Croft, and that they objected to testimony during trial which may have enlarged the pleadings. Accordingly, *738 they asked the trial court to delete this item of damages in their motion for JNOV.
LSA-C.C.P. Art. 861 provides that when items of special damage are claimed, they shall be specifically alleged. The jurisprudence has consistently held that the failure to ask for an item of special damages in the petition precludes entitlement to an award for those damages. Lucy v. State Farm Insurance Company, 475 So.2d 88 (La. App. 2nd Cir.1985). The sole exception to this rule involves situations when otherwise inadmissible evidence of special damages is admitted without objection in the pleadings or enlarged to that extent. Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985). The pleadings are enlarged when special damages not alleged are admitted into evidence without objection. Land and Offshore Co. v. Martin, 469 So.2d 1177 (La.App. 3rd Cir.1985). In brief, Valley Electric and Federated contend that they objected to Croft's questioning of Clifton Young, State Farm's adjustor, on this issue. We disagree. At trial, counsel for Croft elicited testimony from Young that the Croft home had a value of $38,000 and that State Farm paid Croft the policy limit for the home, $34,000. This testimony was unobjected to by Valley Electric and Federated. It was only later that Valley Electric and Federated objected when counsel for Croft asked Young to make the arithmetical calculation of the difference between the house value and the payment made by State Farm. Clearly, their objection came too late. Moreover, Valley Electric and Federated failed to object in two other instances when this question arose: (1) the trial court instructed the jury prior to deliberation that Croft could be awarded an amount for the difference between the value of her home and what State Farm paid her under the policy of insurance; and (2) the special jury interrogatories contained a line on which the jury could award Croft an amount for damages to the house not covered by insurance. Thus, we find that Croft's pleadings were enlarged to this extent. Accordingly, the trial court properly denied Valley Electric and Federated's motion for JNOV on this issue.
In an ancillary question, Croft answered Valley Electric and Federated's appeal, seeking an award of $7500 for mental anguish and an additional $835 ($800 cash and a $35 check) she lost in the fire for which State Farm made no compensation.
The Third Circuit has stated that one may recover damages for mental anguish as a result of property damage when property is damaged at a time in which the owner thereof is present or situated nearby and the owner experiences trauma as a result. Kolder v. State Farm Ins. Co., 520 So.2d 960 (La.App. 3rd Cir.1987). Although the question of whether an owner experiences trauma is a factual determination, the manifest error rule applies to the fact finder's review of this issue. Id., n. 2 at page 964.
Croft testified that she woke during the middle of the night, hardly able to breathe. Fearful for her safety and the lives of her children, she awakened her daughter and son, and together they crawled out of the house through the heavy smoke. Croft testified once they were outside, she stood in her gown and robe at a safe distance from the home, crying as she watched all of her possessions destroyed. Croft described the loss of all the family pictures and various items her children made for her during the years. In particular, she spoke of the pictures and memorabilia she had of her other son who died some years prior to the fire at the age of nineteen. After carefully examining the record, we find manifest error in the jury determination that Croft was not entitled to damages for mental anguish as a result of the fire. Crystal Miller, Croft's daughter who was in the house when the fire began, and Floyd Cason, Croft's neighbor, corroborated Croft's testimony.
Croft asks us to award her $7500 for mental anguish. After reviewing the evidence, we find that an award of $7500 is justified, and we will amend the judgment accordingly.
Croft also asks us to award her $835 for cash and a check she had in the house at *739 the time of the fire. Croft testified, and her daughter corroborated, that she sold several horses to her ex-husband the day before the fire, and that she had $800 from that sale in a purse in the house. Croft also testified that she had a $35 check in her purse at the time of the fire. We find that these items, too, should be awarded as part of the damages Croft is entitled to receive, and will amend the judgment accordingly.

SPECIAL VERDICT FORM
Valley Electric and Federated next contend that one of the jury interrogatories should have asked whether Valley Electric's fault was a legal or proximate cause of the fire, instead of just asking if its fault was a cause of the fire.
LSA-C.C.P. Art. 1812(C) provides:
"In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:
(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages,...."
In the case sub judice, the jury interrogatory read: "If you find that Valley Electric Membership Corporation, Inc. was at fault, was that fault a cause of the fire?".
The trial court instructed the jury in detail about the concept of "legal cause". Moreover, we note that the jury specifically found that Valley Electric was 100% at fault in causing the fire. Since no one else was found at fault, we find that the trial court was in substantial compliance with the demands of LSA-C.C.P. Art. 1812(C). Therefore any error in the wording of the interrogatory was harmless.

EVIDENTIARY RULING
Valley Electric and Federated contend that the trial court erroneously excised those portions of Harbour's deposition, introduced because he was unable to testify in person, which addressed the standard of care of electrical linemen.
LSA-C.C.P. Art. 1635 provides:
"Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor;...."
In the case sub judice, the trial court announced that it would exclude certain portions of the Harbour deposition. We have carefully reviewed the record, and find that Valley Electric and Federated entered no contemporaneous objection to the trial court's decision. Therefore, we find that Valley Electric and Federated may not now raise this issue on appeal.
Finally, State Farm asks us in its answer to the appeal to consider the proffered testimony of Fred Vanderbrook on the issues of the causation of the fire as well as failure analysis. We find no abuse of the trial court's determination not to qualify Vanderbrook as an expert in these areas, and because of our ruling hereinabove, we do not find it necessary to utilize Vanderbrook's testimony. Accordingly, we affirm the trial court's exclusion of Vanderbrook's expert testimony and its decision not to include Vanderbrook's expenses as an item of court costs.
For the foregoing reasons, we affirm the judgment of the trial court in all respects except to award Croft damages for mental anguish and money burned in the fire. Therefore, we amend the judgment as follows: IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Joyce Croft and against VALLEY ELECTRIC MEMBERSHIP CORPORATION and FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, in solido, in the sum of EIGHT THOUSAND THREE HUNDRED THIRTY-FIVE and No/100 ($8,335.00) DOLLARS, plus legal interest from the date of judicial demand until paid. Costs *740 of this appeal are assessed to Valley Electric and Federated.
AMENDED, AND AFFIRMED AS AMENDED, AND RENDERED.
NOTES
[1] Even though Valley Electric contended that Baker only went to the Croft residence one time, Croft's testimony and that of her daughter, Crystal Miller, was otherwise. Factual and credibility determinations are made by the fact finder, and in the absence of manifest error, an appellate court will not overturn the fact finder's conclusion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). If the jury chose to believe the testimony of Croft and her daughter, we cannot say that such a determination was manifestly erroneous. The same standards of review are likewise applicable to Croft's testimony that Buck Miley, one of Valley Electric's board members, visited her home and made certain comments about Valley Electric's voltage problems. Miley did not testify at the trial, and Valley Electric produced no rebuttal evidence on this issue.