DOMENGEAUX, Chief Judge.
Plaintiffs sued defendants for damages which resulted from a fire that ignited in the defendants’ house and spread to the plaintiffs’ house. Plaintiffs are Clarence and Alma Pete; their children, Carver, Le-sia, Fitzgerald, Roselyn (Rose), Ronald, and Kevin; their son-in-law, Ricky Reed; their grandchild, Kevin Pete, Jr.; a friend of the family, Lillian Conway; and Alma Pete’s mother, Amelia Milburn. Defendants are Edward and Castina Trent; their children, Edward, Jr., Byron, and Sabrina; their liability insurer, Aetna Casualty and Surety Company (which was incorrectly named in the petition); and the Petes’ fire insurer, Union National Fire Insurance Company.
Plaintiffs contend the fire began when someone in the Trent household left unattended a pot of food cooking on a gas stove. The fire that resulted completely *576 destroyed both the Pete and Trent homes. There is no serious dispute as to the cause of the fire. Plaintiffs asserted causes of action for negligence and strict liability and urged the applicability of the doctrine of res ipsa loquitur. Union National ultimately paid the limits of its policy and intervened in the Petes’ suit to recover the amounts paid from the remaining defendants. Prior to trial, plaintiffs voluntarily dismissed Sabrina Trent who had never been served.
At trial, plaintiffs presented evidence concerning the cause of the fire and the value of their damages. They were unable to prove which member of the Trent family left the stove on or that the stove was defective. However, the fact that the stove caused the fire was not disputed, and in a stipulation by the parties, Aetna admitted liability. The defendants’ case consisted primarily of an attack on the credibility of the plaintiffs’ testimony concerning the value of their lost property.
The jury returned a verdict in favor of some of the plaintiffs, awarding a total of $74,750.00. No negligence or strict liability was found on the part of the Trents, however, and judgment was rendered solely against Aetna. All of the plaintiffs appealed, raising the following issues:
I. When a fire originates in an adjoining house as a result of a pot being left on the eye of a lighted gas stove, should the trial judge charge the jury as to the doctrine of res ipsa loquitur?
II. When the evidence is uncontested that a house fire resulted from a pot being left on the eye of a lighted gas stove, did the jury err in not holding the owners of the home responsible for that defect in the premises, or, alternatively, the individual who cooked on the stove-top?
III. Should the trial judge have allowed an opinion by an insurance adjuster that 50% of the amount carried on the home itself was adequate coverage for contents, especially in light of the fact that evidence of the amount of one policy, i.e., Transamerica Premier Insurance Company, was not presented to the jury for consideration?
IV.Were the damages awarded to the plaintiffs adequate, especially considering the virtually uncontested movable property loss as suffered by each of the plaintiffs?
We will address the plaintiffs’ third issue first.
THE 50% RULE
Don Perkins testified for Aetna as an expert in property damage appraisals. During the course of his testimony on direct examination, the following colloquy took place:
Q Through your experience have you made any observations as to what the depreciated value of the contents, what relationship they generally bear to the value of a home?
MR. KNAPP: Your Honor, I’m going to again object. I don’t think this has any relevance.
THE COURT: The objection is overruled. You may proceed.
A (By the witness) Well, standard, when we go on a claim, we automatically assume that the contents coverage will be fifty percent of the amount carried on the dwelling which is standard. Sometimes there are riders where they will carry a little more, but fifty percent. That way we normally assume they have at least that much coverage on their contents, and that is standard.
Q (By Mr. Trahan) Okay, and my question now is in your experience of actually appraising these fire losses and tallying up what the contents consist of and what their value is, has your experience borne that out as being the general rule as to what a person’s contents generally—
MR. KNAPP: Your Honor, I, again, object, and it is on the basis of not being relevant to this proceeding. He’s talking in general terms and not talking about this case.
MR. TRAHAN: Well, he can make that—
*577 THE COURT: Well, he can go into that. He’s got an expert here. He’s within the range of the appraisals. You may proceed.
Q (By Mr. Trahan) Okay, again, my question was — I think you understood the question. Go ahead, please.
A (By the witness) Yeah, normally, the contents are in proportion, and it’s been figured out many years ago that this would be adequate for your contents coverage. Now, as a person’s home would pass a certain level and become into the luxury level, then you would expect to find a lot more contents inside even though the 50 percent would be a larger figure. These type of people may tend to have more luxury items than contents as well, to have more jewelry, guns, collections of different things, but in a standard home, 50 percent is usually adequate to take care of all the contents at actual cash value.
The questions asked merely sought to elicit whether a statistical relationship exists generally between the damage appraisal of a home and the damage appraisal of its contents. This is relevant to the defense that the plaintiffs’ damage estimates were not credible. The question was asked in an attempt to prove that the plaintiffs’ alleged contents loss exceeded the general or average contents loss in the expert’s experience. Don Perkins was qualified as an expert to answer questions concerning his specialized knowledge as a property damage appraiser. We hold, therefore, that the trial judge properly overruled the relevancy objections made by plaintiffs’ counsel.
VALUATION OF CONTENTS LOSS
In their petition, plaintiffs itemized their damages for loss of property, expenses, inconvenience, and emotional distress. Plaintiffs attempted to prove the value of their damages by submitting a detailed list of the home’s contents with estimated ages and values of each item. Depreciation was factored in. They estimated the replacement value of some items by obtaining price quotes from local retailers on items similar to those lost in the fire. They collected old photographs from friends and relatives showing the interior of their home. They did not obtain old bank records, retail customer account records, or other such transaction records to prove payments or purchases made. Concerning certain items of furniture that had been given to the Petes as gifts, the plaintiffs did not present any testimony from the donors or other evidence of the value of such gifts.
The defendants contend the plaintiffs overstated the value of their contents loss. The defendants characterized the plaintiffs’ estimated value of the home’s contents as a gross exaggeration, which they attempted to prove by way of example. For instance, the defendants’ expert appraiser testified that some of the photographs of the Petes’ belongings reflected items of a lesser quality or smaller size than the items offered as comparable replacements. The defendants also argued that a household earning an annual income of less than $25,000.00 could not have purchased more than $24,000.00 in furniture and appliances in the two or three years before the fire, nor is it likely the family was given items worth $12,000.00 during that same period.
In Kolder v. State Farm Insurance Co., 520 So.2d 960 (La.App. 3d Cir.1987), a case which involved fire damage to a row of pine trees, we emphasized that the determination of actual damages is a question of fact which will not be disturbed on appeal unless manifestly erroneous and without a reasonable factual basis. In Kolder we affirmed an award of $2,500.00 for the damage to the pine trees. This award was supported by the testimony of two expert witnesses, one who said the replacement cost of the trees was $2,500.00 and another who said the trees’ unsightliness depreciated the value of the property by $2,500.00.
In LaHaye v. Allstate Insurance Co., 570 So.2d 460 (La.App. 3d Cir.1990), writ denied, 575 So.2d 391 (La.1991), we found manifest error on the part of the jury in failing to award the plaintiff the value of certain items lost in a fire. The parties *578 disagreed on the actual existence of some items, but we found sufficient proof of the plaintiffs ownership of 14 contested items. The proof consisted of the plaintiffs testimony, corroborated by the testimony of his wife and a friend who had been in the house prior to the fire, photographs, and invoices for the purchase of some of the items.
The controversy in the case before us involves not the existence of certain items, but rather the value of the contents loss as a whole. The jury adopted the position advocated by the defendants and awarded fifty percent of the amount awarded for the loss of the house. The house was valued at $38,000.00, and the contents loss incurred by Clarence and Alma Pete was valued at $19,000.00. In making this finding of fact, the jury considered the itemized list compiled by plaintiffs, photographs from before the fire, photographs of the damaged interior after the fire, plus the testimony of the plaintiffs, expert insurance appraisers for both sides, and two insurance adjusters for the defendants, all of which we have reviewed thoroughly. Given the inherently speculative nature of such evidence, we do not believe the jury erred in making an award of $19,000.00 for the contents loss suffered by Clarence and Alma Pete.
Of the remaining plaintiffs, three were not awarded any sum and seven were awarded $2,000.00 or less. These awards were not categorized according to property loss, inconvenience, or emotional distress. Because the awards generally correspond to the property losses itemized on the plaintiffs’ inventory list, we conclude that they include damages only for property loss.
Carver Pete’s testimony generally corroborated his losses itemized on the detailed list of contents loss. The jury awarded $1,000.00 to Carver, only $179.00 less than his alleged property damage. This award is adequate given the speculative nature of the damage appraisal evidence.
Amelia Milburn was awarded $2,000.00 while her losses were estimated to be $5,170.00 on the plaintiffs’ detailed list. Amelia did not testify and no evidence was presented to corroborate the higher figure. We believe the award was adequate.
Lesia and Ricky Reed were each awarded $1,000.00 for their losses. Lesia’s testimony corroborated the figure of $1,643.00 listed on the plaintiffs’ detailed inventory list. We find no error in this award.
Fitzgerald and Rose Pete both testified and corroborated their damage estimates contained in the detailed list. They sought damages of $2,050.00 and $6,609.00 respectively and were awarded $1,000.00 and $1,500.00. Although on the low side, these figures are adequate.
Kevin Pete, Jr. was awarded $250.00 for losses estimated at $145.00. There is no error in this award.
Neither Kevin nor Ronald Pete testified, but the detailed list contained loss estimates for the two brothers of $635.00 and $345.00 respectively. No corroborating evidence was presented and we do not believe the jury was manifestly erroneous in failing to make an award to either.
Lillian Conway testified that she lost $400.00 worth of clothes purchased with cash on the evening of the fire which she had left on Rose Pete’s bed prior to going out for the evening. Lillian had no receipt, cancelled check, or other corroborating proof. The jury did not make an award to Lillian and we will not disturb this credibility determination on appeal.
DAMAGES FOR EMOTIONAL DISTRESS
A party may recover damages for mental anguish as a result of property damage when property is damaged at a time in which the owner thereof is present or situated nearby and the owner experiences trauma as a result. State Farm Fire & Casualty Co. v. Valley Electric, 558 So.2d 731 (La.App. 3d Cir.1990); Holder. The question of whether a property owner experiences trauma is a factual de *579 termination that will not be disturbed in the absence of manifest error.
In the case before us, Clarence and Alma Pete testified that just prior to retiring for the night, they noticed from their bedroom window the Trent house was burning. Because the houses are close together, they immediately feared for the safety of their own home. After getting their children and Alma’s infirm mother out of the house, Clarence attempted to spray the house with water, but the heat prevented him from getting close enough to be effective. The family stayed on a neighbor’s porch and watched their home burn until the heat pushed them further away. They were unable to salvage anything once the fire was put out.
Clarence, Alma, Carver, Amelia, Lesia, Ricky, and Fitzgerald were in the house at the time of the fire and all but Amelia and Ricky testified about their activities during the fire. Rose appeared on the scene during the fire and described at trial her efforts to take care of her grandmother and the others. Considering the nature and extent of the property damage and understandable feelings of anxiety suffered by one who has experienced and witnessed such a loss, we believe the plaintiffs are entitled to compensation for the emotional distress proven at trial.
Clarence and Alma were awarded $10,000.00 for “living expenses and inconvenience,” presumably including emotional distress. Their expenses totalled $6,734.00, leaving $3,266.00 as damages for the inconvenience and distress suffered by both Clarence and Alma. We believe $3,000.00 per property owner is the lowest amount reasonably within the discretion of the trial court according to the jurisprudential formula,[1] considering Clarence and Alma both witnessed the total destruction of their home and all of their belongings. The jury award adequately compensates only one of them. We therefore award Clarence and Alma Pete an additional $3,000.00, raising their award to $6,266.00.
Carver, Lesia, Fitzgerald, and Rose witnessed the fire and the loss of their belongings. Because they did not own the home or its furnishings, their com-pensable emotional distress would be considerably less than that suffered by their parents. Accordingly, we increase the awards made to Lesia Reed, and Carver, Fitzgerald, and Rose Pete by $500.00 each, the lowest amount the jury could have awarded for these damages.
Amelia did not testify, but the trauma of getting her out of the house in the chaos of the fire was described by Alma. Rose testified as to the problem of Amelia’s oxygen tank and her confusion during the fire. Given the circumstances of her ill health, we believe $1,000.00 is the lowest amount the jury could have reasonably awarded for Amelia’s emotional distress, and we award her that amount.
RES ISPA LOQUITUR AND THE TRENTS’ NEGLIGENCE
The liability policy issued by Aetna in favor of the Trents provided for $100,-000.00 of liability insurance. Because the damages herein do not exceed $100,000.00, we need not address the issues concerning personal responsibility on the part of the Trents, as they are not at risk for personal liability for the damages incurred.
DECREE
For the foregoing reasons, the judgment appealed from is amended in part, and as amended, affirmed. The award made to Clarence and Alma Pete is increased by $3,000.00, and the award to Amelia Milburn is increased by $1,000.00. The awards made to Carver Pete, Lesia Reed, Fitzgerald Pete, and Roselyn Pete are increased by $500.00 each. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Aetna Casualty and Surety Company.
AFFIRMED, AS AMENDED.

. See Reck v. Stevens, 373 So.2d 498 (La.1979), and its progeny.