520 So.2d 880 (1987)
Frank SILLIKER, Plaintiff-Appellant,
v.
ST. LANDRY PARISH POLICE JURY, et al., Defendants-Appellees.
No. 86-1182.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
*881 Felix A. DeJean, III, Opelousas, for plaintiff-appellant.
*882 Guglielmo, Lopez & Tuttle, James T. Guglielmo, Opelousas, for defendants-appellees.
Trapolin & Coleman, L. Kevin Coleman, New Orleans, for intervenor-appellant.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KNOLL, Judge.
The three issues presented by this appeal are whether or not: 1) the trial court erred in finding the plaintiff 100% at fault after the jury rendered a verdict holding plaintiff only 48.2% at fault and granting a motion for judgment notwithstanding the verdict in favor of defendant's insurer; 2) the trial court committed manifest error in finding plaintiff, Frank Silliker, 100% at fault; and 3) the trial court erred in dismissing the intervention of the Department of Health and Human Resources, State of Louisiana.
Frank Silliker filed suit against the St. Landry Parish Police Jury (hereinafter Police Jury) and their liability insurer, Great Plains Insurance Company (hereinafter Great Plains), to recover damages he sustained when he fell from an aluminum step ladder which he borrowed from the Police Jury to use on the premises where the Police Jury building was located.
A bifurcated trial was held and the plaintiff's claims against the Police Jury, a government body, were tried to the judge, and the claims against Great Plains were tried to a jury. After a trial on the merits, the trial judge ruled in favor of the Police Jury and against the plaintiff, whereas the jury rendered a verdict in favor of the plaintiff and against Great Plains, finding the Police Jury to be 51.8% at fault and the plaintiff to be 48.2% at fault. In addition, the jury returned a verdict for damages in the amount of $263,500. Great Plains moved for a judgment notwithstanding the verdict which the trial judge granted. Silliker filed a devolutive appeal from the judgment of the trial court granting the judgment notwithstanding the verdict. We affirm.

FACTS
The facts are basically undisputed. This suit arose out of an accident on October 26, 1984, when the plaintiff, Frank Silliker, fell from a ladder placed against the Police Jury building. Plaintiff operated a concession stand during the celebration of the Yambilee Festival in Opelousas. The concession was operated from his trailer which he located near the Police Jury building. Due to the proximity of his concession trailer with the Police Jury building, the plaintiff paid the Police Jury $25.00 for electricity needed to operate his concession trailer during the Yambilee Festival weekend festivities.
In order to gain access to an electrical outlet within the Police Jury building, the plaintiff was required to provide a wire to run from his concession trailer to the building. On prior occasions, once the plaintiff provided the necessary wire, an employee of the Police Jury would do the actual wiring.
A few days prior to his accident, the plaintiff again paid the $25.00. In keeping with the prior practice, plaintiff gave the connecting wire to Mr. Robert Speyrer, an employee with the Police Jury, who ran the wire through a window on the second floor of the Police Jury building and tied it to a handle on the outside of the building. After the connection was completed, the plaintiff operated his concession trailer throughout the weekend without incident.
On October 26, 1984, which was the Monday following the Yambilee Festival, the plaintiff asked Mr. Speyrer to unhook the electricity. Mr. Speyrer shut off plaintiff's electricity and commenced taking down the wire from the courthouse window until he was called away on an emergency. After waiting two hours for the Police Jury to remove his wire from the window, plaintiff decided to unhook the cord himself. He went to the Police Jury office to ask if he could borrow a ladder where he was directed to the boiler room. In the basement of *883 the boiler room, Mr. Foreman, director of maintenance for the Police Jury buildings, gave him permission to use a step ladder with a stipulation that he return the ladder when he was finished.
The wooden ladder which the plaintiff borrowed was approximately 6 feet high with four legs. He placed the ladder on the ground without spreading the legs by simply propping the ladder against the building. Despite a warning on the ladder not to go above the third step, plaintiff climbed onto the very top of the ladder. In his attempt to cut the cord holding his wire, he overextended his reach and fell off the ladder onto the ground.
Since assignments of error one and two employ the same standards of law, they will be combined and discussed together for the purposes of this appeal.

STANDARD FOR GRANTING JUDGMENT NOTWITHSTANDING THE VERDICT
The applicable statute governing motions for judgment notwithstanding the verdict is set forth in La.C.C.P. Article 1811 which reads as follows:
"A. (1) Not later than seven days, exclusive of legal holidays, after the signing of the judgment or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the signing of the judgment notwithstanding the verdict, or if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice. The motion shall be served pursuant to Articles 1976 and 1314.
E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine *884 whether a new trial shall be granted.
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues."
The standard of proof which the trial judge is to use in deciding a motion for judgment notwithstanding the verdict under Article 1811 has been set forth by this court in Campbell v. Mouton, 373 So.2d 237, 239 (La.App. 3rd Cir.1979), on appeal after remand, 412 So.2d 191 (La.App. 3rd Cir.1982), which quoted the following language of the U.S. Fifth Circuit Court of Appeal in Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969):
"On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all of the evidencenot just that evidence which supports the nonmover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
In applying this standard, the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (La.App. 4th Cir.1985), writ denied, 472 So.2d 921 (La.1985); Alumbaugh v. Montgomery Ward & Company, Inc., 492 So.2d 545 (La.App. 3rd Cir.1986), writ denied, 495 So.2d 304 (La.1986); Rougeau v. Commercial Union Insurance Co., 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied, 437 So.2d 1149 (La.1983); Campbell, supra.
Although the trial judge's discretion is limited in applying this standard, in cases where virtually no factual dispute exists and no credibility determinations by the fact-finder are required, questions of existence of a duty, violation of that duty by the defendant, and assumption of the risk or contributory negligence by the plaintiff are legal questions, and within the province of the judge to decide. Rawls v. Damare, 377 So.2d 1376 (La.App. 4th Cir. 1979), writ denied, 380 So.2d 72 (La.1980); Rougeau, supra. In his reasons for judgment the trial court stated:
"Having reviewed all of the evidence in light most favorable to the plaintiff, I find that the facts and inferences point so strongly and overwhelmingly in favor of the defendant that reasonable men could arrive at no other verdict than that the evidence fails to sustain a finding of fault or liability against the St. Landry Parish Police Jury, its agents and/or employees under any of the theories of recovery proposed by the plaintiff: namely, under LSA-C.C. arts. 2315, 2317, and 2322 ..."
Having determined that the trial judge applied the proper standard in granting Great Plains' motion for judgment notwithstanding the verdict, we must review the evidence in a light most favorable to the plaintiff, drawing all reasonable inferences most favorable to him, to determine whether the trial court committed manifest error.

LANDOWNER'S DUTY OF CARE
It is apparent from the trial judge's reasons for judgment, the pleadings, and the parties' appellate briefs that the plaintiff filed suit seeking recovery for personal injuries under a theory of strict liability and/or under a theory of negligence. Regardless of the theory asserted, the duty of an owner of immovable property is the same. When an individual is injured as a result of a hazardous condition existing on the landowner's property, he can recover damages under either LSA-C.C. Art. 2315, which is the basis of general negligence liability, or under Art. 2317, which provides for a strict liability theory of recovery.
*885 Owners and occupiers of land have a duty to discover any reasonably dangerous conditions existing on his premises and to either correct those conditions or warn potential victims of their existence. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); McCormick v. Insured Lloyd's Insurance Company, 488 So.2d 491 (La.App. 3rd Cir.1986); Haney v. General Host Corporation, 413 So.2d 624 (La.App. 1st Cir.1982); Boutte v. Pennsylvania Miller's Mutual Insurance Company, 386 So.2d 700 (La.App. 3rd Cir.1980); Albritton v. J.C. Penney Company, Inc., 385 So.2d 549 (La.App. 3rd Cir.1980), writ denied, 393 So.2d 727 (La.1980).
Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.1983), writ denied, 435 So.2d 429 (La. 1983), stated that:
"This duty is the same under the strict liability theory of Louisiana Civil Code Article 2317 as under the negligence liability theory of Louisiana Civil Code Article 2315. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Shelton v. Aetna Casualty Insurance Company, 334 So.2d 406 (La.1976). The difference in proof between these theories of liability is that, under Louisiana Civil Code Article 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under Louisiana Civil Code Article 2317, a claimant is relieved of proving the defendants' scienter. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497, 498 (La.1982); Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La. App. 1 Cir.1983), decided 1983. Under either theory of liability, the plaintiff has the burden of proving that: 1. The property which caused the damage was in the custody of the defendant; 2. The property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises. (Breach of duty); 3. The defect in the property was a cause in fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585, 588 (La. 1980). Under either theory of liability the court must decide if the risk which causes the injury is within the ambit of protection of the duty. Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982); Entrevia v. Hood, 427 So.2d 1146 (La.1983), (decided in 1983)."

STRICT LIABILITY
Strict liability for things in one's custody is found in LSA-C.C. Art. 2317 which states:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or the things which we have in our custody. This, however, is to be understood with the following modifications."
LSA-C.C. Art. 2322 further defines the application of the general principle of LSA-C. C. Art. 2317 to the owner of a building. LSA-C.C. Art. 2322 provides as follows:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
This court in Bradford v. Consolidated American Insurance Company, 493 So.2d 895, at 898 (La.App. 3rd Cir.1986), citing Koppie v. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3rd Cir. 1985), writ denied, 479 So.2d 922 (La.1985), defined what type of defect gives rise to strict liability and said that:
"[Under a theory of strict liability] Not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. McKinnie v. Department of Transportation and Development, 426 So.2d 344 (La.App. 2nd *886 Cir.1983); Campbell v. Tidwell, 407 So. 2d 1359 (La.App. 3rd Cir.1981)."
In determining whether a given condition is unreasonably dangerous, the degree to which the danger may be observed by a potential victim who may then provide self protection is a major factor. Smith v. Hartford Accident and Indemnity Company, 385 So.2d 858 (La.App. 1st Cir.1980); Haney, supra. Also, property owners must keep their premises free of defects or conditions in the nature of hidden traps, dangers or pitfalls, which are not known to the visitor and which would not be observed by him in the exercise of reasonable care. Calhoun v. Royal Globe Insurance Company, 398 So.2d 1166 (La. App. 2nd Cir.1981).
Plaintiff alleges the Police Jury was strictly liable for his injuries due to the existence of the sand on the ground where the ladder was placed. This court in Campbell v. Tidwell, supra, held that the presence of a foreign object on the premises is not in and of itself a defect for the purposes of strict liability. In Campbell, the plaintiff filed a tort action to recover damages for personal injuries she sustained when she fell in a driveway parking area located behind a building owned by the defendant. She testified that she fell and twisted her ankle after stepping on some foreign object. The court stated:
"We disagree with the plaintiff's contention that the presence of a foreign object, such as a piece of dirt or clay, if in fact there was one on the premises, constitutes a defect within the meaning of Civil Code Articles 2317 and 2322, giving rise to Louisiana's counterpart to strict liability." Plaintiff failed to prove that his injury resulted from a condition that created an unreasonable risk of harm to persons on the premises or that there was a defect in the property which was a cause in fact of his injury.
The presence of sand on the ground is similar to dirt or clay on a parking lot and its presence does not automatically give rise to strict liability. After a review of the record, we are of the opinion that the plaintiff failed to show that the presence of sand on the ground outside the Police Jury courthouse created an unreasonable risk of harm or that the sand was a cause in fact of his injury.
Having determined that strict liability is not applicable in this case, we must ascertain whether the plaintiff can recover under a theory of negligence.

NEGLIGENCE
LSA-C.C. Art. 2315 is the basis of negligence law in Louisiana and states in pertinent part:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
In determining the legal responsibility in a tort claim, Louisiana courts have adopted a duty-risk analysis approach. Dixie Drive It Yourself Systems v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). To hold the defendant liable for his negligence, each of the following questions must be answered in the affirmative:
1. Did the defendant owe a duty to the plaintiff?
2. Was this duty breached?
3. Was the breach of duty a substantial factor in bringing about harm to the plaintiff?
4. Did the risk and harm encountered by the plaintiff fall within the scope of the protection afforded by the duty breached?
See Ballew v. Southland Corporation, 482 So.2d 890 (La.App. 2nd Cir.1986); Dixie Drive It Yourself Systems, supra.
The plaintiff asserts that the defendant was guilty of negligence due to the fact that he was given a step ladder, rather than an extendable type; ladder, to remove his electrical wiring, and that the existence of sand around the Police Jury building contributed to his accident. After a review of the testimony and evidence, we find that the plaintiff failed to support either argument. The initial inquiry in any duty-risk analysis is causation. There must be a causal relationship between the harm to *887 the plaintiff and the defendant's alleged conduct. Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Johnson v. Hartford Acc. & Indem. Co., 476 So.2d 570 (La.App. 3rd Cir.1985), writ denied, 479 So.2d 362 (La.1985). If the plaintiff can show that he probably would not have suffered the injury complained of but for the defendant's conduct, he has carried his burden of proof relative to cause in fact. Johnson v. Hartford Acc. & Indem. Co., supra; Mitchell v. South Central Bell, 442 So.2d 876 (La.App. 3rd Cir. 1983).
Plaintiff's injury did not stem from any negligent act committed by the defendant, but was instead the result of his improper use of the step ladder. The only real factual dispute that arose during the trial was whether the sand located on the premises contributed to his accident.
From the evidence, it is apparent that the sole cause of this accident was plaintiff's conduct in standing on top of the ladder and leaning over too far to the side. Plaintiff argued that sand located at the bottom of the moat surrounding the Police Jury building caused the ladder to move, and that contributed to his fall. Plaintiff, however, testified that before the accident occurred, he did not see any sand on the bottom of the moat. The sand was not evident, and consisted of very fine, tiny granules at best. In fact, plaintiff stated that he checked the ladder three times and it appeared to be on solid footing. Plaintiff's argument that the existence of sand contributed to his accident is unsupported by the facts. At trial, he testified that he did not know what caused him to fall.
The only testimony concerning the effect of sand on this accident was that of Robert Owen, an expert in the field of safety as it relates to practices, procedures, personnel and equipment in the work place. Mr. Owen testified as follows:
Q. Do you think that sand played an effect here?
A. I don't think it had anything to do with it here.
Q. Why is that, sir?
A. Well, because of the fact thatfirst off, the ladder remained in place even after he came off of it, so if sand had been any real factor he would have probably slipped out and fallen over. And, also the way he was standing on the ladder was such that regardless of whether there was a lot of sand or no sand I believe the ladder would have done the same thing because he was reaching beyond the side rails and creating a force that would tend to kick the ladder to the opposite direction in which he was leaning.
Q. So in your expertise do you have any opinion as to what caused this accident?
A. I feel that this accident was caused due to the fact that the man had climbed clear to the top step, had raised the center of gravity above the top of that ladder, and then he was reaching over to cut that wire or cut that rope that was holding that wire with a knife, and as he reached out to do that, when he actually cut through the cord or the rope that was holding it, that particular moment he had a moment when he was off balance. In other words, when he went through it kind of gave, and he had been applying force to it and the force was not eliminated he went forward, and that would cause the ladder to kick backwards and off of it he goes.
Q. Do you think that sand caused the ladder to kick back?
A. Did I think
Q. That sand caused the ladder to kick back?
A. No, I don't think the sand had anything to do with it. In fact, the main point of coefficient of friction is between the top of the ladder and the wall that it was leaning up against.
Q. In your area of experience, practices, procedures and personnel in the work place, do you know of anything that you heard that the Police Jury did or didn't do that you think caused or contributed to this accident?
A. No, sir, I do not see a thing."
This testimony clearly indicates that the existence of sand had nothing to do with this accident. Under these facts, the Police *888 Jury or their insurer, Great Plains, cannot be held responsible for plaintiff's injury under a theory of strict liability or under a theory of negligence.
In reviewing the trial court's decision granting a judgment notwithstanding the verdict and finding plaintiff, Frank Silliker, 100% at fault, it is the duty of the appellate court to determine whether the trial court's findings were manifestly erroneous. Arceneaux v. Domingue, 365 So. 2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). Applying the law to the facts of the present case, it is clear that the plaintiff failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree and as such we find no error in the trial judge's entry of a judgment notwithstanding the verdict in favor of the defendant. Also, the trial judge's determination that plaintiff was 100% at fault was supported by the evidence at trial. Therefore the trial court did not commit manifest error.
By finding plaintiff 100% at fault, the third assignment of error is moot.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are taxed to plaintiff-appellant, Frank Silliker.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.