671 So.2d 1101 (1996)
Leon Brice MILLET, Sr., Plaintiff-Appellant,
v.
Dallas CORMIER, et al., Defendants-Appellees.
No. 95-953.
Court of Appeal of Louisiana, Third Circuit.
March 27, 1996.
*1102 Gregory Karl Klein, James Paul Lambert, Lafayette, for Leon Brice Millet Sr.
Andre' Joseph Buisson, Jennings, for Dallas Cormier et al.
Paul Leonard Veazey Jr., Lake Charles, for Alden Hebert et al.
Lorraine Adrienne Dupont, Baton Rouge, for State of Louisiana.
Before DOUCET, C.J., and KNOLL and DECUIR, JJ.
KNOLL, Judge.
This case involves a fall on the outside of a leased building. Leon Brice Millet, Sr. appeals the dismissal of his tort claims against Mrs. Bernie Hebert Hurst, her son, Alden Hebert, Jr., and their insurer, State Farm General Insurance Company, and Dallas Cormier, the former Sheriff of Jefferson Davis Parish. A bifurcated trial was held in this matter. A jury determined Millet's claims against Hurst, Hebert, and State Farm, and the trial judge determined the claims against the Sheriff.
At the conclusion of the trial, the jury rendered a verdict, finding Hurst and Hebert 12 ½ at fault, the Sheriff 12 ½ at fault, and Millet 75% at fault. It awarded damages of $313,000 (unadjusted for comparative fault). The trial judge found the Sheriff free from fault under either a negligence or strict liability theory, and dismissed Millet's suit with prejudice. In a post-verdict motion for judgment notwithstanding the verdict, the trial judge reversed the jury verdict and dismissed Millet's lawsuit against Hurst, Hebert, and State Farm.
Millet appeals the judgments of the trial court that dismissed his lawsuit. Millet contends that: (1) the trial court committed manifest error in finding that the violations of the Southern Building Code and the Life Safety Code and the manner in which the automobile was parked were not causes in fact of the accident; (2) the trial judge and the jury were not clearly wrong in accepting *1103 Millet's version of the accident, i.e., that his left foot rolled on an extension cord, and in rejecting defendants' theory that his fall was precipitated by a pre-existing knee problem; (3) the trial judge erred in finding that Millet assumed the risk of the accident and his injuries; (4) the trial judge erred in not addressing the question of breach of duty because he erroneously found that the Code violations were not a cause in fact of the accident and that the defendants owed no duty to prevent the automobile and the extension cord from obstructing the pathway; (5) the jury manifestly erred in finding that Millet's fault was three times greater than the defendants; (6) the trial judge erred in granting the defendants' motions for judgment notwithstanding the verdict. We affirm.

FACTS
The facts surrounding Millet's fall are partially disputed. In his written reasons for judgment on the claim against the Sheriff, the trial judge succinctly summarized the applicable undisputed details and set out the conflicting facts as follows:
This suit involves an accident which occurred on or about September 4, 1990, at the Office Annex of the Jefferson Davis Parish Sheriff's Office located at 208 S. Main Street, Jennings, Louisiana.
At the time of the accident, the Office Annex was owned by Mrs. Bernie Hebert Hurst and Alden Hebert, Jr. and was verbally leased to the Jefferson Davis Parish Sheriff's Office.
The plaintiff LEON BRICE MILLET, SR. contends that he fell and injured himself when he attempted to ascend the steps at the rear of the Office Annex. Mr. Millet is claiming damages for personal injuries which he alleges he sustained in the fall as a result of the joint fault or negligence of the defendants, MRS. BERNIE HEBERT HURST and ALDEN HEBERT, JR., the owners of the property, and their liability insurance company, STATE FARM GENERAL INSURANCE COMPANY, and DALLAS CORMIER, the former Sheriff of Jefferson Davis Parish, the lessee of the property.
* * * * * *
Plaintiff was employed by the State of Louisiana, Department of Agriculture and Forestry as District Supervisor with the Livestock Brand Commission. As an accommodation in connection with his work, the Sheriff's Office allowed him to use the Annex to do his paperwork and use the telephone. He gained access to the Annex by using the rear entrance which was a private entrance used mainly by the detectives and other deputies working out of the Annex. Criminal suspects were brought through this entrance for questioning by the detectives, and other law enforcement personnel also used this entrance.
There were no eyewitnesses to the accident but Deputy Lloyd Dartez, who was inside the house near the door, heard a noise and opened the door and saw the plaintiff on the ground picking up some of his papers which were scattered around.
Although there is no question about the fact that plaintiff suffered a fall at the rear entrance on September 4, 1990, there is a serious dispute regarding the manner in which the fall allegedly occurred.
According to plaintiff's testimony he parked in the rear and approached the steps from the side rather than in a straight-on fashion because an automobile was parked near the steps. In his hands were a metal report folder, a pile of paperwork and several folders.
An orange outdoor extension cord was located across the area leading to the side of the steps and was located near the side of the steps. This cord, as well as a hose, were used to carry electricity and water to a house next door where a trustee regularly washed and vacuumed official vehicles.
Plaintiff testified that the accident occurred when his left foot slipped on the extension cord as his right foot was stepping up to get on the steps which caused him to fall on his right side with his head on the other side of the steps.
The Sheriff's Office points to numerous inconsistencies between the testimony of *1104 Mr. Millet at trial, his deposition testimony and various statements he made to physicians and others regarding the manner in which the fall allegedly occurred.
The Sheriff's Office contends that the plaintiff has not met his burden of proving by a preponderance of the evidence that his fall was caused by the extension cord, or some other external factor for which the Sheriff's Office is responsible.
Plaintiff admitted at trial that with the exception of what he told Deputy Dartez right after the accident, the first mention to anyone with the Sheriff's Office that the extension cord may have been involved in his fall was made sixteen (16) months after the date of the accident and four (4) months after suit was filed.
Deputy Dartez testified that he gave a statement to plaintiff's attorney over two (2) years after the accident occurred. His testimony at trial concerning whether plaintiff mentioned the extension cord in relating how the accident occurred was rather indefinite and inconclusive.
Other deputies inside the Annex who plaintiff talked to shortly after the accident testified that there was no mention of any extension cord. Deputy Earline Deshotel testified that plaintiff only stated to her that "he had fell". Deputy Kevin Boudin testified that plaintiff did not mention the extension cord, only that he "fell on steps at the back door" and "slipped on the steps". Deputy Delton Guillot testified that nothing was said by plaintiff about tripping, stepping on an extension cord, but it was an old injury and "his knee gave out and he fell".
On the day of the accident plaintiff saw Dr. Charles Olivier in Lafayette and on the form he filled out for the doctor [he] mentioned only that he "fell on steps". Dr. Olivier's handwritten notes during his conversation with plaintiff state "going up steps", "got acute pain", "and right knee and fell". Dr. Olivier's office notes dictated after the visit state that plaintiff "... states that on September 4, 1990, he was on the job and was going up the steps to a jail. His right knee developed acute pain and he fell. He didn't fall on his knee. He just caught himself...."
Two (2) days after the accident, plaintiff telephoned in an injury report to his employer and in answer to the question "What was the employee doing when injured?" Plaintiff said "Walked up steps, tripped and fell". No mention of an extension cord.
On October 3, 1990, plaintiff saw Pat Boulet, a Physical Therapist, who personally took the history from him. Plaintiff Stated to her that "he was walking up steps and that his knee had locked up". Again, no mention of an extension cord.
Plaintiff saw Dr. Lynn Foret for an independent medical evaluation on September 10, 1991, approximately one (1) week after he filed this suit. Dr. Foret, in his medical history, indicated that plaintiff told him that "he was at the Jeff Davis Detective Office and approached some steps from the side and slipped and fell directly upon his buttock region". Again, there was no mention of an extension cord.
Plaintiff's discovery deposition was taken on January 7, 1992 and this was the first indication to anyone connected with the Sheriff's Office that the extension cord was allegedly involved in the fall.
The Sheriff's Office argues quite persuasively that the histories presented to Dr. Olivier on the day of the accident, as well as to Therapist Boulet approximately five (5) to six (6) weeks after the fall, reflecting pain and/or locking in his knee as he was climbing the steps is consistent with his pre-existing medical condition concerning the knee which caused the fall and not the extension cord.
The evidence shows that in September of 1980, plaintiff sustained a ruptured medial meniscus of his right knee and had a meniscectomy performed. One (1) year after the surgery, plaintiff reported a "crumbling sensation" in his knee with pain over the patella tendon and pain with squatting and stair climbing activities. He was diagnosed with chondromalacia, a condition identified as progressive and degenerative. In October of 1988, he again injured his left knee and saw Dr. Lee Leonard, an *1105 orthopedic surgeon, in Lafayette. Plaintiff complained of his "bones rubbing" in his knee which he had injured while climbing a fence. Dr. Leonard noted locking, though no complete locking. He noted that when plaintiff steps up, his knee will start to lock, he has a shooting pain and then feels okay. Dr. Leonard diagnosed plaintiff with degenerative chondromalacia which is a progressive condition. He testified that this condition produces loose bodies and calcification within the knees, that the loose bodies can get knocked off getting wedged in the knee joint causing it to lock up.

BASIS FOR TRIAL JUDGE'S DETERMINATION OF MILLET'S CLAIM AGAINST SHERIFF CORMIER
The basis of Millet's argument is that the trial court made a factual determination that the extension cord caused his fall. This is incorrect. Millet further contends that the trial judge was not manifestly erroneous in rejecting the defendants' assertion that his fall was caused by a pre-existing knee problem. Again, this is an incorrect interpretation of the trial court's reasons. The trial court's written reasons for judgment show that the trial judge never made this factual determination. Therefore, Millet's assertion on this issue is misplaced. The reasons for judgment reflect that the trial judge found that the conditions present at the site of the accident, namely, the extension cord, the steps, and the parked car, did not present an unreasonable risk of harm, with which we agree.
After the trial judge discussed these two hotly contested factual assertions, he stated in his written reasons:
After hearing and carefully considering all of the evidence, the Court has a serious question in its mind as to whether the plaintiff's fall was caused by the extension cord. However, for the purpose of deciding this case, the Court will accept plaintiff's version of how the accident occurred.
Having made that statement, the trial judge hinged his resolution of this case on findings that the extension cord did not pose an unreasonable risk of harm and that the various alleged building code violations had nothing to do with Millet's accident.
After carefully reading the trial judge's written reasons for judgment, we do not find that he made a factual finding that the extension cord was the cause of Millet's fall or that he rejected the defendants' assertion that Millet's pre-existing knee condition caused the fall. As we read the trial judge's statement in context of the entire written reasons, we find that the trial judge did not feel that he had to reach those factual determinations. In that regard, we find that the sentence relied upon by Millet was inserted by the trial court in arguendo. Thus, the two statements made by the trial court in arguendo are not factual findings, therefore, Millet's reliance upon these statements as factual findings is misplaced. These statements are simply in arguendo statements that we will not review for manifest error.
We now turn to Millet's assertion that the trial judge erred in finding that Cormier was not liable under either a theory of negligence or strict liability. Regardless of the theory asserted, the duty of the owner or occupier of the immovable property is the same. Silliker v. St. Landry Parish Police Jury, 520 So.2d 880 (La.App. 3 Cir.1987). When an individual is injured as a result of a hazardous condition existing on the landowner's property, he can recover damages under either La.Civ.Code art. 2315 or under La.Civ. Code art. 2317. Owners and occupiers of land have a duty to discover any unreasonably dangerous conditions existing on his premises and to either correct those conditions or warn potential victims of their existence. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976).
In Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141 (La.App. 1 Cir.1983), writ denied, 435 So.2d 429 (La.1983), the First Circuit stated:
This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315. The difference in proof between these theories of liability is that, under Louisiana Civil Code Article 2315, it must be shown that the owner, or person in *1106 custody, either knew or should have known of the risk, whereas under La.C.C. art. 2317, a claimant is relieved of proving the defendants' scienter. Under either theory of liability, the plaintiff has the burden of proving that: (1). the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises. (breach of duty); (3) the defect in the property was a cause in fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty.
Farr, 430 So.2d at 1143. (Citations omitted).
Moreover, in Koppie v. Commercial Union Ins. Co., 478 So.2d 179 (La.App. 3 Cir. 1985), writ denied, 479 So.2d 922 (La.1985), we further defined what type of defect gives rise to strict liability and said that:
[Under a theory of strict liability] not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature as to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
Koppie, 478 So.2d at 181.
Furthermore, a pedestrian is not required to look for hidden dangers, but is bound to observe his course to see if his pathway is clear. The pedestrian is held to have seen those obstructions in his pathway which would have been discovered by a reasonably prudent person exercising ordinary care under the circumstances. Davidson v. Shreveport Yacht Club, Inc., 535 So.2d 1192 (La.App. 2 Cir.1988), writ denied, 537 So.2d 1162 (La.1989).
In his written reasons for judgment, the trial judge stated:
The issue is whether the location of the extension cord poses an unreasonable risk of harm to plaintiff under the circumstances of this case. In analyzing this issue, the size and nature of the cord, its location, the plaintiff's familiarity with the area and the use of ordinary care by the plaintiff are factors which should be considered.
The residence was designed with an outdoor extension outlet located within a few feet of the rear entrance. No expert testified that its location was contrary to any construction or design standards. Thus, the outdoor extension cord was located in an area where it could reasonably have been expected to be and was being used as expected to furnish electricity to outdoor electrical appliances. Moreover, it was orange in color and clearly visible. In fact, plaintiff was aware of the location of the extension cord as he had entered the building on numerous occasions prior to the day of the accident without incident.
On this occasion, plaintiff chose to enter the building with his arms full of paperwork which probably obscured his vision. As will be discussed later in this opinion, he did not have to approach the steps from the side but chose to do so. Under the law he had a duty to see the cord which was plainly visible, and therefore, assumed the risk attendant upon his use of the premises. Plaintiff could have avoided this accident with the exercise of the slightest amount of caution. Under the circumstances, the Court finds the extension cord did not pose an unreasonable risk of harm to plaintiff.
In his appellate argument, Millet seizes upon the trial judge's use of the term, assumption of risk, and urges us to reexamine the case because the Louisiana Supreme Court abolished this defense in Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La. 1988).
Although the Louisiana Supreme Court abolished assumption of the risk, it has maintained its well established policy that "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably *1107 dangerous." Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Murray, 521 So.2d at 1136 (citing Shelton, 334 So.2d at 410). "Therefore, under a duty/risk analysis, if the facts of a particular case warrant, there could be a finding that a defendant owed no duty under circumstances, or on the other hand, that a plaintiff was 100% at fault." Socorro, 579 So.2d at 941.
Applying this well accepted jurisprudence, we find that the trial judge essentially found that the bright orange extension cord was not unreasonably dangerous, particularly since it was obvious to Millet and he was familiar with its routine placement in this location outside the back entrance. In another sense, we find that the trial judge could easily have deleted his reference to assumption of risk and could have substituted that he found that Millet was 100% at fault under the circumstances presented in the case sub judice. After carefully examining this record, we cannot say that the trial judge was manifestly erroneous in finding that the extension cord was not unreasonably dangerous and that Millet was 100% at fault.
We next turn to Millet's assertion that the steps to the rear entrance of the Sheriff's Annex were defective. In support of his position, Millet states that the steps were unreasonably dangerous because their construction was not in compliance with the Southern Building Code, the American National Standard's Institute Code, and the National Fire Protection Association Life Safety Code. He asserts that the codes required the installation of handrails, a landing, and the presence of a non-skid surface, and points out that there were unacceptable variances in the tread risers and excessive rounding of the tread and nosing.
In his written reasons for judgment, the trial judge first found that Millet's fall was not caused by the condition of the steps. The trial judge then also concluded that the various codes were inapplicable because their standards were established to provide safe methods for exiting buildings in an emergency situationa situation not presented in this litigation.
It is well settled that for wrongful conduct to be actionable in tort, it must be found to be a cause-in-fact of the resulting harm. Shelton, 334 So.2d 406. Thus, if the plaintiff can show that he probably would not have suffered the injury complained of "but for" the defendants' conduct, he has carried his burden of proof relative to cause-in-fact. Id. In the present case, we find that the trial judge was not manifestly erroneous in his finding that the steps were not a cause-in-fact of the harm Millet suffered. Utilizing Millet's testimony, it is clear that the steps had nothing to do with Millet's injury. We cannot say that "but for" the steps, Millet's accident would not have happened.
We now focus on Millet's contention that the trial judge was manifestly erroneous in his conclusion that the Sheriff was not negligent in allowing Deputy Guillot to park his car so as to partially block the steps.
In determining this aspect of the litigation adverse to Millet, the trial judge concluded that the evidence showed that the car did not completely block straight-on access to the steps. To reach that conclusion, the trial court relied upon the testimony of Deputies Deshotel and Guillot. Again, we have carefully examined the record in this regard and cannot say that the trial judge was manifestly erroneous in finding that the placement of Deputy Guillot's car did not constitute actionable negligence.

JUDGMENT NOTWITHSTANDING THE VERDICT
Millet next contends that the trial judge was manifestly erroneous in reversing the jury verdict that found Hurst and Hebert partially liable for the injuries he suffered in the fall at the building they leased to the Sheriff.
La.Code Civ.P. art. 1811 governs motions for judgment notwithstanding the verdict. The standard of proof which the trial judge must use in deciding a motion for judgment n.o.v. was set forth by this court in Campbell v. Mouton, 373 So.2d 237 (La.App. 3 Cir. 1979). In Campbell we quoted approvingly from Boeing v. Shipman, 411 F.2d 365 (5 *1108 Cir.1969), and adopted the following standard:
"On motions for ... judgment notwithstanding the verdict, the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
Campbell, 373 So.2d at 239.
In applying this standard, the trial judge cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Silliker, 520 So.2d 880. Although the trial judge's discretion is limited in applying this standard, in cases where virtually no factual dispute exists and no credibility determinations by the fact-finder are required, questions of existence of a duty, violation of that duty, and victim fault are legal questions, and within the province of the trial judge to decide. Pitts v. Bailes, 551 So.2d 1363 (La. App. 3 Cir.), writs denied, 553 So.2d 860 (La.1989) and 556 So.2d 1262 (La.1990).
After carefully reviewing the record, we find that the trial judge was asked to consider the same questions that he surfaced in his written reasons when he assessed the Sheriff's liability. Clearly, there is not substantial evidence of such quality and weight that reasonable and fair-minded men might reach different conclusions regarding: (1) the determination that the orange electric cord did not present an unreasonable risk of harm, (2) the assessment of 100% fault to Millet sanctioned in Shelton and approvingly continued in Murray and Socorro, (3) the inapplicability of the codal exit requirements for the rear steps, and (4) the determination that the automobile as parked did not constitute actionable negligence. Accordingly, we find that the trial judge was not clearly erroneous in granting the motion for judgment notwithstanding the verdict.
For the foregoing reasons, the judgments of the trial judge are affirmed. Costs of this appeal are assessed to Leon Brice Millet, Sr.
AFFIRMED.