707 So.2d 475 (1998)
Robert CREEL and Kaye Creel, Plaintiffs-Appellees,
v.
ST. CHARLES GAMING CO., INC., Defendant-Appellant.
No. 97-994.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1998.
*477 Jere Jay Bice, Lake Charles, for Robert Creel and Kaye Creel.
A. J. Gray III, Lake Charles, for St. Charles Gaming Company, Inc.
Before DOUCET, C.J., and PETERS and SULLIVAN, JJ.
DOUCET, Chief Judge.
The Defendant, St. Charles Gaming Co., Inc. (St.Charles), appeals a judgment finding it 100% at fault in connection with injuries sustained by Kaye Creel in a slip and fall accident at the Isle of Capri Casino in November 1995.
St. Charles owns and operates the Isle of Capri Casino in Westlake, Louisiana. From the time it opened in July 1995 until her accident in November, Mrs. Creel and her husband visited the casino about twice a month. On November 18, 1995, the two arrived at the casino at about 8:30 p.m. According to their custom, they listened to a band in the pavilion area for a time. Mrs. Creel testified that during this period she drank her first drink of the evening, a beer. After a time, she and Mr. Creel boarded the boat to gamble. Mrs. Creel testified that while on the boat she drank one scotch and water. Later Mr. and Mrs. Creel returned to the pavilion area to listen to the band and dance. Mrs. Creel drank all or part of another beer. Although there was no dance floor, couples customarily danced in a clear area roped off from the seating area. Potted plants were arranged along the ropes, inside the dance area. Uncontradicted testimony indicates that there was no effort to discourage dancing in this area. While Mrs. Creel and her husband were "slow dancing," the movements of the dance took them close to the edge of the dance area. She stepped on the saucer under one of the potted plants, slipped and fell onto her left hand, which she put out to catch herself. She quickly got up and finished the dance with her husband. Her hand and wrist began hurting, and she noticed that her wrist was swollen. When she showed it to her husband, he took her to the emergency room. There the wrist was X-rayed. It was discovered that the wrist was broken. Mrs. Creel's wrist was put in a cast. A few days later, the break was found to be unstable. Surgery was done on November 27, 1995, to stabilize the break by inserting hardware in the bone. An external fixator was surgically placed on Mrs. Creel's wrist. In January 1996, the hardware and the external fixator were removed. Mrs. Creel completed her treatment course of physical therapy.
As a result of the injury, Mr. and Mrs. Creel filed this suit against St. Charles, alleging both strict liability and negligence. The matter was tried to a judge. After hearing the evidence, he found that the potted plants created an unreasonable risk of harm. He found St. Charles 100% at fault in the accident. He awarded $75,000.00 in general damages; $20,807.36 in medical expenses; $7,359.84 for past lost wages; $21,500.00 for lost earning capacity; $30,000.00 for loss of household services; and $10,000.00 for loss of consortium. St. Charles appeals. The Creels have answered the appeal.

UNREASONABLE RISK OF HARM
The Defendant first avers that the trial court erred in finding that the potted plants on the perimeter of the dance floor created an unreasonable risk of harm.
*478 This court recently outlined the duty of an owner or occupier of immovable property with regard to persons on the premises.
Regardless of the theory asserted, the duty of the owner or occupier of the immovable property is the same. Silliker v. St. Landry Parish Police Jury, 520 So.2d 880 (La.App. 3 Cir.1987). When an individual is injured as a result of a hazardous condition existing on the landowner's property, he can recover damages under either La.Civ.Code art. 2315 or under La.Civ. Code art. 2317. Owners and occupiers of land have a duty to discover any unreasonably dangerous conditions existing on his premises and to either correct those conditions or warn potential victims of their existence. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976).
In Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141 (La.App. 1 Cir. 1983), writ denied, 435 So.2d 429 (La.1983), the First Circuit stated:
This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315. The difference in proof between these theories of liability is that, under Louisiana Civil Code Article 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La.C.C. art. 2317, a claimant is relieved of proving the defendants' scienter. Under either theory of liability, the plaintiff has the burden of proving that: (1). the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises. (breach of duty); (3) the defect in the property was a cause in fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty.

Farr, 430 So.2d at 1143. (Citations omitted).
Moreover, in Koppie v. Commercial Union Ins. Co., 478 So.2d 179 (La.App. 3 Cir.1985), writ denied, 479 So.2d 922 (La. 1985), we further defined what type of defect gives rise to strict liability and said that:
[Under a theory of strict liability] not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature as to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.

Koppie, 478 So.2d at 181.
Millet v. Cormier, 95-953, pp. 7-8 (La.App. 3 Cir. 3/27/96); 671 So.2d 1101, 1105-06, writs denied, 96-1026 (La.5/31/96); 673 So.2d 1036; 96-1039 (La.5/31/96); 673 So.2d 1036 (alteration in original) (citations omitted in original).
The trial judge, in weighing the risk against the utility of the objects herein, found that the posts and ropes had a high utility but that the potted plants had no value beyond the decorative. He found that their encroachment on the dance floor served no useful purpose. He concluded that the potted plants constituted an unreasonably dangerous condition. This determination is a question of fact subject to the manifest error standard of review. Nichols v. Wal-Mart Stores, Inc., 97-265 (La.App. 3 Cir. 7/2/97); 698 So.2d 53, writ denied, 97-2067 (La.11/14/97); 703 So.2d 628.
The Defendant argues that the plants were not unreasonably dangerous because they were easily visible to the Creels. In support of this argument, the Defendant cites Haas v. Eddie Ray's Inc., 517 So.2d 882 (La.App. 3 Cir.1987). In that case, the plaintiff fell over a planter/partition while waiting to enter the dance floor. This court held that the partition did not constitute an unreasonably dangerous condition because it was clearly visible to the plaintiff and he was aware of its existence and location.
In this case, however, Mrs. Creel did not fall over the potted plant, but slipped on the saucer under the plant. Both Mrs. Creel and *479 her husband testified that the saucer, which was dark green and extended out from the bottom of the plant, was not easily visible against the dark green and pink of the carpet. They further testified that they were not aware of the saucers before her fall. No testimony or evidence was introduced to contradict the Creels' testimony.
Given the evidence of record, we find no error in the trial judge's conclusion that the potted plants constituted an unreasonably dangerous condition.

COMPARATIVE NEGLIGENCE
The defendant next argues that the trial court erred in failing to find the Creels comparatively negligent.
"The assignment of comparative fault is a factual determination subject to the manifest error-clearly wrong standard of review. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La. 1985)." Nichols, 97-265 at p. 6; 698 So.2d at 56.
In support of its argument with regard to the comparative negligence of the Creels, the Defendant relies heavily on an inconsistency in Mrs. Creel's reported alcohol intake on the night of the accident. While Mrs. Creel stated at trial that she had three drinks, two beers and one scotch and water, the emergency room records show that Mrs. Creel reported that she had three beers and three scotch and waters. Mrs. Creel testified that she had never said this. The decision about which evidence to credit in this regard is a credibility evaluation.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Unless a witness's story is implausible or is contradicted by objective evidence, when "a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Id. at 845. Therefore, we find no error in the trial judge's decision to credit Mrs. Creel's testimony in this regard.
The Defendant further asserts that the Creels were negligent in failing to observe an obvious hazard. Had Mrs. Creel tripped over the plant, this might be the case. However, the testimony supports the conclusion that the saucer, while a hazard, was not obvious.
[A] pedestrian is not required to look for hidden dangers, but is bound to observe his course to see if his pathway is clear. The pedestrian is held to have seen those obstructions in his pathway which would have been discovered by a reasonably prudent person exercising ordinary care under the circumstances. Davidson v. Shreveport Yacht Club, Inc., 535 So.2d 1192 (La. App. 2 Cir.1988), writ denied, 537 So.2d 1162 (La.1989).
Millet, 95-953, p. 8; 671 So.2d at 1106.
We cannot say the trial judge was in error in concluding that the saucer posed a hazard that would not "have been discovered by a reasonably prudent person exercising ordinary care under the circumstances." Id. Therefore, we find no error in the decision not to apportion fault to the Creels.

QUANTUM
The Defendant argues that the award of general damages is too high. The Plaintiffs assert, in their answer to the appeal, that the award is too low. The Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994) explained the standard of review applicable to general damage awards:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case *480 is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Id., 623 So.2d at 1260-61 (footnote omitted).
Here, the trial judge made an award of $75,000.00 in general damages. Mrs. Creel suffered fractures of the distal radius and of the scaphoid bone. Surgery was required to stabilize the fractures. The stabilizing hardware was removed after approximately six weeks. She could not use her hand during that period and required help for many ordinary tasks of daily living. At that point, Mrs. Creel undertook a course of physical therapy intended to rehabilitate her wrist and hand. Mrs. Creel became depressed because of the pain and her inability to do the things she had previously been able to do. She was treated for depression by Dr. Gerald Mouton and continued to take antidepressant medication at the time of trial. Her treating orthopedic surgeon felt she had reached maximum medical cure and would not fully recover from the injury. She testified that her wrist and hand remained too weak to allow her to do many of her normal activities.
Under the circumstances, we cannot say that the award of damages is an abuse of the vast discretion vested in the trial court in this regard. Accordingly, we will not adjust the award either upward or downward.

LOST EARNING CAPACITY
The Plaintiffs and the Defendant dispute the award made for lost earning capacity. The Defendant argues that the Plaintiffs failed to carry their burden of proving any loss of earning capacity. The Plaintiffs assert that the evidence supports the conclusion that Mrs. Creel had entirely lost her ability to earn.
"Unless the record demonstrates that the trial court abused its much discretion in its award for loss of earnings capacity, as a court of appeal we should not disturb or *481 second-guess its award." Pierce v. Milford, 96-92, pp. 8-9 (La.App. 3 Cir. 9/25/96); 688 So.2d 1093, 1098 (citations omitted).
Mrs. Creel testified that before the accident she had been employed cleaning houses four mornings a week. She was paid $35.00 for each morning's work and sometimes earned $40.00 if she did extra work. She testified that after the accident this type of work was difficult, if not impossible, because of the weakness of her hand. She did, however, continue to clean her daughter's house one morning a week for $35.00. The only expert testimony concerning lost earning capacity was given by Dr. Charles Bettinger, an economist. He calculated her loss of earning capacity based on the hypothesis that, before the accident, Mrs. Creel could work forty hours a week at the legal minimum wage of $5.15 per hour until age sixty-five and that after the accident she could not work. Based on this, he arrived at a lost earning capacity valued at $63,479.00. The trial judge recognized that Mrs. Creel's earning capacity was affected by her lack of work experience except as a domestic and her age. However, he also recognized that the record did not affirmatively establish that Mrs. Creel was unable to do any work. The trial judge made an award for lost earning capacity of one-third of the amount given by Dr. Bettinger, concluding from the medical evidence that Mrs. Creel had a residual disability of 34%.
The Defendant argues that Mrs. Creel had never been employed full time and that the testimony did not show any such intention on her part. Therefore it argues that, based on Mrs. Creel's past work history, she would not have lost more than $43,680.00. Given a 34% disability rating, the Defendant suggests that the most the court should have awarded was $14,851.20.
This court recently discussed the basis for awards of lost earning capacity:
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.

Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979). In accord, Hobgood v. Aucoin, 574 So.2d 344 (La.1990); Batiste v. New Hampshire Ins. Co., 94-1467 (La.App. 3 Cir. 5/3/95); 657 So.2d 168, writ denied, 95-1413 (La.9/22/95); 660 So.2d 472. Even an accident victim who is "unemployed at the time of the injury ... is entitled to an award for impairment or diminution of earning power." Folse, 371 So.2d 1120, 1123.
Pierce, 96-92, p. 3; 688 So.2d at 1095.
Considering the facts adduced at trial, we find no error in the trial judge's conclusion that Mrs. Creel was entitled to an award for lost earning capacity, although not an award representing a complete loss of future earning capacity. We find that the award was neither excessive nor inadequate.

LOSS OF CONSORTIUM
The Defendant argues that the evidence does not support an award for loss of consortium.
In order to prove a claim for loss of consortium, a plaintiff must prove three things: (1) the liability of the defendant, (2) his or her spouse's damages, and (3) his or her consequent loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App. 3 Cir. 11/6/96); 682 So.2d 974. Loss of consortium is more than just a loss of general overall happiness, it also includes love and affection, society and companionship, sexual relations, the right of performance of material services, the right of support, aid, and assistance, and felicity. Detraz [v. Hartford Accident & Indemnity Co., 94-708 (La.App. 3 Cir. 12/7/94)], 647 So.2d 576 [(1994)]. The trier of fact is given much discretion in awards for loss of consortium and will not be overturned on appeal in the absence of manifest error. Doucet v. Doug Ashy Bldg. Materials, Inc., 95-1159 (La.App. 3 Cir. 4/3/96); 671 So.2d 1148; Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3 Cir.1986). *482 Bellard v. South Cent. Bell Tel. Co., 96-1426, p.___ (La.App. 3 Cir. 8/27/97); 702 So.2d 695.
After reviewing the record, we find little, if any, support for an award of loss of consortium to Mr. Creel. He did not testify to any loss in the areas outlined in Bellard. The only loss identified was of household services, which the trial court dealt with in a separate award. Therefore, we vacate the award for loss of consortium.

LOSS OF HOUSEHOLD SERVICES
Finally, the Defendant argues that the trial court erred in making an award for loss of household circumstances.
Louisiana law allows, as an element of damages, reasonable housekeeping expenses necessitated by the incapacity of an injured spouse. Odom v. Claiborne Electric Cooperative, Inc., 623 So.2d 217 (La. App. 2d Cir.1993), writ denied, 629 So.2d 1171 (La.1993); Mims v. Reliance Insurance Co., 535 So.2d 1085 (La.App. 2d Cir. 1988); Cushman v. Fireman's Fund Insurance Co., 401 So.2d 477 (La.App. 2d Cir.1981).
Maranto v. Goodyear Tire & Rubber Co., 25,114, pp. 6-7 (La.App. 2 Cir. 5/10/95); 661 So.2d 503, 507.
We find no authority supporting the Defendant's argument that an award for loss of household services may be made only where the plaintiffs actually hire help to perform the services. The record here adequately supports an award for loss of household services.
Before the accident, Mrs. Creel provided all household services. Since then, her husband and daughter have taken over most housekeeping duties. Those Mrs. Creel retains, she can only do partially or with help. Based on the number of hours spent by working women on household duties, Dr. Bettinger calculated the lost value of Mrs. Creel's household services, over the period for which she could have been expected to provide them, at $105,647.00 if she could no longer do any housework, or $38,033.00 if she needed help for one day a week. The Defendant presented no evidence to controvert this award. The trial judge awarded $30,000.00. Given the evidence of record, we find no error in this award.

CONCLUSION
For these reasons, the judgment is reversed insofar as concerns the award for loss of consortium. In all other respects, the judgment is affirmed. Costs of this appeal are assessed 95% to the Defendant and 5% to the Plaintiffs.
REVERSED IN PART; AFFIRMED IN PART.